UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-651-FDW

| | |
|---|---|
| **CHRISTOPHER OXENDINE-BEY,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> ) <br> **R. DAVID MITCHELL, et al.,** ) <br> ) <br> **Defendants.** ) <br> _____ ) | **ORDER** |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Milessia Abernathy, Kenneth A. Beaver, Michael L. Brooks, Kristopher D. Kiker, Terry Lemon, Jane Mims, R. David Mitchell, and Angela Rorie. (Doc. No. 50).

**I.  BACKGROUND**

A.  Procedural Background

Pro se Plaintiff Christopher Oxendine-Bey filed this action on November 21, 2014, pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to protect him in connection with two mutual confrontations involving other inmates while Plaintiff was housed at Lanesboro Correctional Institution in 2014. When Plaintiff filed this action he was a North Carolina prisoner, but he has since been released from prison. The following seven individuals have been named as Defendants: (1) John Mitchell, identified as the Superintendent of Lanesboro Correctional Institution ("Lanesboro"); (2) Terry Lemon, identified as a Sergeant at Lanesboro; (3) John Brooks, identified as an officer at Lanesboro; (4) John Aaron, identified as a Unit Manager at

1

Lanesboro; (5) Jane Mims, identified as a Sergeant at Lanesboro; (6) Angela Rorie, identified as an officer at Lanesboro; (7) Kenneth Beaver, identified as the Assistant Superintendent of Lanesboro; (8) FNU Kiker, identified as an officer at Lanesboro; and (9) FNU Abernathy, identified as an officer at Lanesboro.

In his original Complaint, Plaintiff asserted that Defendants failed to protect him from an assault by another inmate that occurred in October 2014. (Doc. No. 1). Before the Court's frivolity review, Plaintiff filed an Amended Complaint, which included allegations of a second assault in August 2014.[1] (Doc. No. 7). Plaintiff alleged in the Amended Complaint that Defendants violated his Eighth Amendment rights by failing to protect him from a known threat from gang members in the prison. (Id.). On May 7, 2015, the Court allowed Plaintiff's claims to proceed on initial review. (Doc. No. 8). In June 2015, summonses were served on all Defendants except for John Aaron, who has never been served. (Doc. Nos. 14-20). Plaintiff seeks compensatory and punitive damages. (Id.).

On March 11, 2016, Defendants filed the pending summary judgment motion. (Doc. No. 50). On March 14, 2016, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 64). Plaintiff filed several responses and accompanying exhibits, and Defendants have filed a Reply. (Doc. Nos. 65; 66; 67; 68).

---

[1] Plaintiff attempted to amend the Complaint further on multiple occasions to include new defendants and allegations regarding events (including a May 2015 assault) that allegedly occurred after this action was filed. All of Plaintiff's attempts to amend have been rejected or stricken by the Court. (Doc. Nos. 9; 25). The only alleged assaults at issue in this case are the August 2014 and October 2014 altercations between Plaintiff and other inmates.

B.   Factual Background

1.   Plaintiff's Failure to Protect Claim and the Summary Judgment Evidence

a.   Plaintiff's Allegations

Plaintiff asserts that after he was released from intensive control (ICON) at Lanesboro Correctional Institution ("Lanesboro") in June 2014, he was assigned to Moore Unit which Plaintiff asserts was where the facility housed gang members. Plaintiff asserts that he was wrongly assigned to the unit and wrongly labeled as belonging to a "security threat group," ("STG," meaning involvement in gang activity). Plaintiff alleges that on June 8, 2014, he submitted a grievance, stating that he feared for his life, health, and safety because certain gang members who were on that unit had threatened to hurt Plaintiff. Plaintiff alleges that the gang members had "plac[ed] a hit out on him, due to him being [labelled] a snitch due to him reporting illegal activity between staff and inmates." (Doc. No. 7 at 2). Plaintiff requested in the grievance to be placed in protective custody or to be transferred to another prison, but his request was denied. (Id.).

Plaintiff alleges that on August 18, 2014, he was "viciously attacked by inmate Bond who is a[] very well known gang member, [while] he was standing inside of the day area." (Id.). Plaintiff alleges that he was sent to segregation and charged with fighting even though Plaintiff was acting in self-defense. Plaintiff alleges that, because of the attack by Bond, Plaintiff was placed on a STG watch list and was "force[d] back into [a] gang member housing block on Moore Unit." (Id. at 3). Plaintiff alleges that Defendant Rorie rewarded inmate Bond "for viciously attacking the plaintiff due to [Rorie's] dislike of [Plaintiff] because of him filing lawsuits and grievance forms against them for violating his constitutional right and report[ing] illegal drug [activities] between inmates and staff [at] the facility, and they deliberately set the plaintiff up to be assaulted by this inmate to try to teach plaintiff a lesson about running his mouth." (Id. at 3-4).

3

Plaintiff alleges that, before the attack by inmate Bond, Plaintiff informed Defendants Mitchell, Beaver, Lemon, Aaron, and Mims that he feared for his safety because of threats by gang members.

Plaintiff also alleges that on October 9, 2014, while Plaintiff was housed in the progressive housing unit program, an inmate named Anthony Leslie "viciously attacked" Plaintiff, stabbing him 17 times with a shank while Plaintiff was returning from breakfast. (Id. at 8). Plaintiff alleges that, before inmate Leslie attacked him, Plaintiff had told Defendants Brooks and Kiker that he feared for his safety and requested to be placed in protective custody, but the request was denied. (Id.). Plaintiff alleges that, as a result of the two attacks from inmates Bond and Leslie, he "suffered two, separate black eyes, nerve damage inside of his left arm, where he was stabbed 17 times, neck, and back pain where the plaintiff was constantly kicked, stomped, and punched in his face, head, neck, and ribs, and the plaintiff also suffered a fracture or broken ribs and mental and emotional stress." (Id. at 11).

  b. Defendants' Summary Judgment Materials

In support of the summary judgment motion, the moving Defendants have each submitted their own affidavits. See (Doc. No. 52: Aff. of R. David Mitchell; Doc. No. 53: Aff. of Kenneth A. Beaver; Doc. No. 54: Aff. of Maranda Mims; Doc. No. 55: Aff. of Angela Rorie; Doc. No. 56: Aff. of Terry Lemon; Doc. No. 57: Aff. of Kristopher C. Kiker; Doc. No. 58: Aff. of Michael L. Brooks; Doc. No. 59: Aff. of Milessia Abernathy). Defendants have also submitted incident reports related to the alleged assaults, witness statements, Plaintiff's administrative grievances related to his claims, Plaintiff's offender history, video of the confrontations between Plaintiff and the other inmates, and documents relating to the disciplinary action against Plaintiff after the incidents. See (Doc. No. 52).

Defendants' summary judgment evidence shows the following:

4

Plaintiff became a North Carolina Department of Public Safety ("NCDPS") inmate in 2008 after being convicted as a habitual felon. (Doc. No. 52 at ¶ 3). In November 2012, Plaintiff was transferred to Lanesboro. (Id. at ¶ 4). Plaintiff has a significant infraction history. Since 2008, Plaintiff has pled guilty to or has been found guilty of approximately 116 infractions—including infractions for fighting, threatening to injure staff, assaulting staff, and weapon possession. (Id. at ¶ 5). In or around 2013, Plaintiff was validated by NCDPS as being affiliated with or involved in STG (gang) activity. (Id. at ¶ 6). In November 2013, Plaintiff was found guilty of being in possession of materials that were verified as being associated with a gang. (Id.; Doc. No. 53 at ¶ 3).

Because of Plaintiff's STG status and significant infraction history, prison administrators determined that Plaintiff was an appropriate candidate for housing in Lanesboro's close observation housing unit for regular population, which at the time was Moore Unit. (Doc. No. 52 at ¶ 7). The program was designed to provide additional observation and programs to inmates coming out of segregation or a higher level of control who, due to their STG affiliation or infraction history, needed additional observation so they could successfully integrate back into the regular population. The goal of the program (and its successor program "CORP," which stands for the Close Observation for Regular Population Program) is to "establish guidelines that provide for a safe, secure and humane environment for staff and offenders while providing intensive and incentive-based cognitive behavioral modification programs which provide education and support to offenders that have exhibited or are identified as having the propensity to exhibit behavioral problems, gang affiliation/involvement, violent, assaultive, disruptive, or extortive behaviors upon staff, offenders and public." (Id. at ¶ 8). The program was also designed to decrease inmate and staff assaults and reduce the amount of "lock down" time during

which all inmates in the facility or on a block are restricted and without access to other inmates. (Id.; Doc. No. 54 at ¶ 3).

Here, Plaintiff complains of two assaults at Lanesboro: an assault on August 18, 2014, involving inmate D. Bond and an assault on October 9, 2014, involving inmate A. Leslie. The incidents are described in detail in the affidavits filed in support of Defendants' summary judgment motion. Documentation and video recordings of the incidents are attached as exhibits to David Mitchell's affidavit. See (Doc. Nos. 52-4, 52-5, 52-6, 52-7: Exs. D, E, F, and G to Mitchell Aff.). The video recordings and other documents in the record reveal that the confrontation on August 18, 2014, occurred after Plaintiff voluntarily remained at the door of the cell inmate Bond was occupying for quite some time. The inmates started fighting after Plaintiff walked away from the cell. The inmates stopped fighting on their own when a "Code" was called, and before officers arrived. (Doc. No. 52 at ¶ 11). Weapons were not involved, Plaintiff was not injured, and medical treatment was not needed. (Id.). Plaintiff was charged with and pled guilty to the infraction of fighting. (Id. at ¶ 12). Inmate Bond was also appropriately charged and disciplined. (Id.).

The second incident occurred on October 9, 2014, near the Control Booth. While it appears that Inmate Leslie initiated this assault, Plaintiff continued to fight after correctional officers ordered him to stop. (Id. at ¶ 14). Two or more correctional officers responded to the incident immediately upon realizing Plaintiff and Leslie were fighting, and officers quickly brought the incident under control. Officers immediately took Plaintiff to medical after the incident, where the following injuries were documented: "On 10.9.14 @ approximately 0800, inmate Christopher Oxendine 0599696, was brought to main medical for assessment following an altercation & use of force on Moore Unit. Oxendine had scattered scrapes & scratches to the

back of the left shoulder, left arm, & lower left abdomen. He also had a right black eye with mild swelling. He denied any pain. First aid was given & a precautionary tetanus shot, as well as Tylenol & an ice pack for the right eye." (Id. at ¶ 17).

Plaintiff was charged with and found guilty of fighting based on his failure to stop fighting when ordered to do so. (Id. at ¶ 18). Plaintiff was also charged with and pled or was found guilty of weapon possession. Inmate Leslie was also appropriately charged and disciplined. (Id.). Prison officials investigated the incidents. According to Defendants' affidavits, no determinations were ever made that the incidents were gang-related, or the result of any "hit" being placed on Plaintiff, or planned. (Id. at ¶¶ 19, 20; Doc. No. 54 at ¶¶ 9, 14; Doc. No. 53 at ¶ 13; Doc. No. 56 at ¶ 7). The facility determined, instead, that the incidents were either mutual confrontations that had occurred spontaneously or because of words the inmates had exchanged in the past. (Doc. No. 52 at ¶¶ 18, 19; Doc. No. 54 at ¶¶ 9-11).

In support of the summary judgment motion, Defendants state in their affidavits that none of them knew that the assaults were going to occur, or that there was any prior tension between Plaintiff and inmates Bond and Leslie before they fought. See (Doc. No. 52 at ¶ 20; Doc. No. 54 at ¶¶ 15, 16; Doc. No. 57 at ¶¶ 5, 9; Doc. No. 58 at ¶ 12; Doc. No. 59 at ¶ 8; Doc. No. 56 at ¶¶ 8-12). Defendants further state that, although Plaintiff contends that he told Defendant Brooks that Inmate Leslie was going to assault him just before the assault occurred and that Defendant Kiker overheard this conversation, the sworn affidavits in the record establish that Defendant Brooks was not on duty for two hours before the incident and did not work, that day, on the same shift with Defendant Kiker. (Doc. No. 52 at ¶ 23; Doc. No. 58 at ¶ 10; Doc. No. 57 at ¶ 11).

Defendants contend that, although Plaintiff voiced general complaints in a grievance before the assaults, Plaintiff did not, at any time before the assaults at issue in this case, voice

7

specific concerns regarding threats or specific inmates. Rather, Plaintiff's complaints were more focused on his STG status, his housing assignment, and the fact that he was charged with infractions. (Doc. No. 52 at ¶¶ 27-32). Plaintiff also did not sign a request for protective custody before the assaults involved in this case. (Doc. No. 52 at ¶¶ 24, 26; Doc. No. 54 at ¶¶ 7, 8; Doc. No. 53 at ¶ 13; Doc. No. 56 at ¶ 9). The only request for protective relief form signed by Plaintiff occurred after this civil action was filed. On June 4, 2015, Plaintiff signed an "Inmate Declaration of Protective Needs." (Doc. No. 52 at ¶ 26; Doc. No. 54 at ¶ 10). Plaintiff also signed an "Inmate Declaration of Non-Protective Needs" the following day, on June 5, 2015. (Doc. No. 52 at ¶ 26).

In their affidavits, Defendants state that Plaintiff would not have been a suitable candidate for protective custody had he signed a form before the assaults. The incidents involving Plaintiff were determined to be mutual confrontations, which are handled through the disciplinary process. (Doc. No. 56 at ¶ 13; Doc. No. 55 at ¶ 12; Doc. No. 53 at ¶ 14; Doc. No. 54 at ¶ 12; Doc. No. 52 at ¶ 28). Furthermore, it was determined at all relevant times that Moore Unit was an appropriate housing assignment for Plaintiff based on his NCDPS history. (Doc. No. 52 at ¶ 28).

Defendants have also presented evidence showing that, during the facility's investigation of Plaintiff's grievances regarding the incidents at issue in this case, the facility never received any information supporting, substantiating, or corroborating Plaintiff's claim that he was being threatened by inmates or was at a heightened risk of being assaulted by inmates. (Doc. No. 52 at ¶¶ 27-32, 35; Doc. No. 54 at ¶¶ 9, 11, 14-15, 17; Doc. No. 53 at ¶ 17; Doc. No. 55 at ¶ 13). Defendants did not determine, or believe, at any time that Plaintiff was at a heightened risk of being assaulted for any reason before the assaults at issue in this case. (Doc. No. 52 at ¶¶ 32, 33;

Doc. No. 58 at ¶¶ 12-13; Doc. No. 54 at ¶¶ 15-17; Doc. No. 53 at ¶ 17). The facility investigated Plaintiff's concerns and fears and could not substantiate his claims that other inmates were allegedly out to get him. (Doc. No. 52 at ¶¶ 32, 35; Doc. No. 54 at ¶¶ 15-17).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56

9

provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

The Eighth Amendment requires prison officials to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Officials must take "reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). In other words, "[t]he government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833. Nonetheless, "[t]he burden is on the prisoner to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." Pyles v. Fahim, 771 F.3d 403, 408-09 (7th Cir. 2014) (citing Whitley v. Albers, 475 U.S. 312, 325 (1986)). Not every "injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Instead, the Supreme Court has outlined two requirements for an Eighth Amendment failure to protect claim. First, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). In other words, the denial of the prisoner's constitutional

10

rights must be "sufficiently serious." Id. Second, the prison official must have a "sufficiently culpable state of mind," id., which means the official either purposefully caused the harm or acted with "deliberate indifference," Wilson v. Seiter, 501 U.S. 294, 302-03 (1991).

In the Eighth Amendment context, deliberate indifference "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995). For a prison official to be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The test is subjective, not objective. Brice, 58 F.3d at 105. A prison official is not liable if he or she "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844; see also Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (finding that a prison official was not liable, because he did not actually draw the inference that the inmate was exposed to a substantial risk of serious harm). Whether Defendants were subjectively aware of the risk of harm can be shown either through direct evidence or circumstantial evidence of actual knowledge. Makdessi v. Fields, 789 F.3d 126 (4th Cir. 2015).

The Court first finds that, to the extent that Plaintiff's claims against some of the named Defendants are based solely on supervisory liability (i.e., Lanesboro Superintendent Mitchell and Assistant Superintendent Beaver), which is still not clear from the Amended Complaint, Plaintiff's claims against these supervisors fail as a matter of law because respondeat superior does not apply in Section 1983 actions.[2] See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694

---

[2] In any event, even if Plaintiff is pursuing a theory of liability against all of the named Defendants based on their personal conduct, Defendants are entitled to summary judgment in

(1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply). Furthermore, to the extent that Plaintiff has sued Defendants in their official capacities, such suit is effectively against the State of North Carolina. Neither the State nor it agencies constitute "persons" subject to suit under Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003); Savage v. North Carolina Dep't of Corr., No. 5:06-cv-171-FL, 2007 WL 2904182, at *5 (E.D.N.C. Sept. 29, 2007).

Next as to Plaintiff's claim against the named Defendants in their individual capacities, Plaintiff has not raised a genuine dispute of material fact as to whether Defendants were deliberately indifferent to Plaintiff's claim that he was in danger from assaults by other inmates. In their affidavits, Defendants state that they were not aware of any threats made against Plaintiff before the assaults, or of any prior tension between Plaintiff and the inmates involved in his assaults, and that the confrontations appeared to be mutual. Furthermore, Plaintiff was found or pled guilty to infractions after each incident, and all of the inmates involved were disciplined. It is undisputed that Defendants investigated and responded to all of Plaintiff's complaints and grievances. It is further undisputed that Defendants never determined and never drew any conclusions, through their investigations or based on any information provided to them, that Plaintiff was at a heightened risk of being assaulted, that he was being threatened, or that he was in need of protective custody before the assaults. Plaintiff did not sign a request for protective custody before filing this action. Defendants state in their affidavits that Plaintiff would not have

---

their favor for the reasons stated herein.

been a suitable candidate for protective custody before the assaults, which again were determined to be mutual confrontations.

The Court finds that the evidence on summary judgment shows that, at most, Plaintiff has presented evidence that he raised <u>general</u> concerns about his safety while being housed at Lanesboro. In other words, Plaintiff has produced no evidence showing that he raised complaints about the specific inmates with whom he fought, or why he believed that they were going to engage in a fight with him. An inmate's generalized complaints to prison guards about alleged tensions among inmates at a prison and complaints about a general threat to the prisoner's safety does not establish deliberate indifference by prison guards where an attack subsequently occurs. Allowing a plaintiff to prevail in a Section 1983 action, based merely on general concerns about non-specific threats to his safety, where the prisoner is subsequently attacked, would result in the strict liability of prison officers. <u>See</u> <u>Gant v. Campbell</u>, 4 F. App'x 254, 256 (6th Cir. 2001) (finding no Eighth Amendment violation for failure to protect where the plaintiff expressed a general concern about his safety but did not identify any particular gang members whom he feared); <u>Bogan v. Brunsman</u>, 1:11-CV-259, 2013 WL 360357, at *6 (S.D. Ohio Jan. 30, 2013) (report and recommendation, finding that "[h]ere, although Plaintiff expressed general concern for his safety while allegedly showering and exercising with the general population and known gang members; [he] did not identify any particular gang members whom he feared, or identify any specific threats made by general population inmates"), <u>adopted</u>, 2013 WL 754262 (S.D. Ohio Feb. 27, 2013); <u>Ketterman v. City of New York</u>, 00 CIV. 1678 (NRB), 2001 WL 579757, at *6 (S.D.N.Y. May 30, 2001) ("The plaintiff does not allege that any corrections officer was specifically aware of any substantial risk of harm to him, or aware that another inmate in the general population posed a substantial risk of harm to inmates generally, . .

13

. nor does he allege that there were any general or specific threats made against him, that there was any history of violence or ill-will between himself and gang members generally or other inmates generally, or his assailants in particular, or that he perceived himself to be at any risk of harm, let alone that he informed a prison official of any perceived risk to him.").

In opposing the summary judgment motion, Plaintiff has failed to submit evidence raising a genuine dispute of material fact as to his failure to protect claim against Defendants. That is, Plaintiff has presented no evidence to rebut the evidence presented by Defendants showing that they were not aware of any threats made against Plaintiff before the assaults, or of any prior tension between Plaintiff and the inmates involved in the fights. Indeed, in his responses to the summary judgment motion, Plaintiff barely mentions Defendants themselves and/or any specific manner in which the moving Defendants allegedly failed to protect him from the 2014 assaults. Significantly, Plaintiff points to no evidence establishing that any Defendant knew or determined that Plaintiff was at a heightened risk of being assaulted by inmate Bond or Leslie. Instead, Plaintiff relies on alleged conduct and an assault that occurred after he filed this action involving an officer referred to as "Ms. Davis," who is not named as a Defendant in this action. The remainder of Plaintiff's response merely generally attacks prison life and/or Lanesboro's close observation housing unit, which is insufficient to overcome summary judgment in this case. Specifically, as to Plaintiff complaints about being in the close observation unit, courts have held that inmates do not retain a liberty interest as to changes in confinement such as "location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges" because said matters "are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable

them to manage prisons safely and effectively."[3] Deblasio v. Johnson, 128 F. Supp. 2d 315, 328-29 (E.D. Va. 2000) (quoting Gaston v. Taylor, 946 F.2d 340 (4th Cir. 1991) (en banc)).

In sum, the Court finds that Plaintiff has not raised a genuine dispute as to whether Defendants were deliberately indifferent to Plaintiff's safety in failing to protect Plaintiff from assaults by inmates Bond and Leslie. Thus, Defendants are entitled to summary judgment.[4]

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 50), is **GRANTED**, and this action is dismissed with prejudice.

2. The Clerk is directed to terminate this action.

Frank D. Whitney
Chief United States District Judge

---

[3] The Court accepts that, because the prisoners placed in the progressive housing unit at Lanesboro, have shown themselves to be at the highest risk of dealing with conflict through violence, the risk of inmate fights in this unit may be higher than in other units at Lanesboro. It is not the Court's role, however, to question the wisdom of NCDPS placing the most dangerous prisoners together in the same unit.

[4] Defendants raised qualified immunity as a defense to Plaintiff's claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendants are entitled to qualified immunity. Furthermore, although Defendant Aaron was never served with process, he is entitled to summary judgment for the same reasons the Court is granting summary judgment to the moving Defendants.